UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALLIE S. CASTILLO,<br><br>        Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of the Social Security<br>Administration,<br><br>        Defendant. | CAUSE NO. 3:22-CV-17 DRL-MGG |

<u>ORDER AND OPINION</u>

Allie S. Castillo appeals the Social Security Commissioner's final judgment denying her supplemental security income. Ms. Castillo requests either a finding of disability based on the evidence or remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court vacates the administrative decision and remands for further proceedings.

BACKGROUND

Ms. Castillo suffers from a variety of impairments including migraines, obesity, Crohn's disease, major depressive disorder, right fifth finger amputation, and degenerative joint disease of the right knee. She filed an application for disability benefits on August 23, 2018, alleging the same as her disability onset date [R. 10]. Ms. Castillo was 36 years old on the alleged onset date [R. 21]. She has a high school education, but no past relevant work [R. 21].

Her application was denied initially and again on reconsideration [R. 10]. She appealed that decision to an Administrative Law Judge (ALJ), Charles Thorbjornsen, and two hearings were held: one on July 23, 2020 and another on January 7, 2021. In a March 31, 2021 decision, the ALJ denied Ms. Castillo's petition on the basis that there were sufficient jobs available in the national economy that she could perform considering her age, education, work experience, and residual functioning capacity (RFC)

[R. 21-22]. Ms. Castillo challenged the decision with the Appeals Council. After the Council denied her request on November 3, 2021 [R. 1], she appealed here.

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [his] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (quotation omitted). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). This high deference is lessened whenever the ALJ's findings are built on errors of fact or logic. *Thomas*, 745 F.3d at 806.

## DISCUSSION

An individual is disabled when she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This impairment must be so severe that the individual "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work [that] exists in the national economy, regardless of whether such

2

work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A).

When considering a claimant's eligibility for disability benefits, an ALJ must apply a standard five-step analysis, asking whether (1) the claimant is currently employed; (2) the claimant's impairment or combination of impairments is severe; (3) her impairments meet or exceed any of the specific listed impairments that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) the claimant can perform her former occupation, if the impairment has not been listed as conclusively disabling, given the claimant's residual functioning capacity (RFC); and (5) the claimant cannot perform other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

At step one, the ALJ determined that Ms. Castillo had not engaged in substantial gainful activity since her application date, so he proceeded to step two [R. 12]. There, the ALJ determined that Ms. Castillo had a number of severe impairments, including migraine headaches, as well as additional non-severe impairments [R. 13]. At step three, the ALJ decided that these impairments didn't meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Thus the ALJ proceeded to step four where he concluded that Ms. Castillo had the residual functioning capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), subject to certain modifications. Relevant here, the administrative decision concluded that Ms. Castillo "can have occasional exposure to humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibration. Work environments must be limited to moderate noise. [She] is able to perform simple, routine tasks, and is able to perform simple work-related decisions. [She] is able to

occasionally interact with supervisors and coworkers, with brief and superficial contact defined as no lower than an 8 in terms of the 5th digit of the DOT Code" [R. 15-16].

Finally, at step five, the ALJ considered Ms. Castillo's age, education, work experience, and residual functioning capacity to conclude that there were 65,100 jobs in the national economy that she could perform: document preparer (30,100), printed circuit board inspector (19,800), and optical assembler (15,200) [R. 22]. Based on this analysis, the ALJ concluded that she wasn't disabled [R. 22].

Ms. Castillo challenges the ALJ's disability determination and advances three arguments. First, she says the ALJ failed to account adequately for limitations resulting from her migraines, despite finding migraines to represent a severe impairment. Second, she says the ALJ failed to account for his finding of moderate limitations to interacting and concentrating. Third, she says the ALJ inappropriately determined that 65,100 jobs in the nation represented a significant number of jobs. The court addresses only the first argument because it alone requires remand—examined through three lenses.

    A.    *Evaluation of Medical Opinions (Dr. Lee Fischer and Dr. Kevin Kristl).*[1]

Ms. Castillo argues that the administrative decision neglected to apply the agency's regulations for weighing medical opinion evidence, which in her words "only further cemented the crafting of an RFC that failed to account for migraines." She decries the ALJ's evaluation of medical opinions from both Dr. Fischer and Dr. Kristl.

Her claim was filed after March 27, 2017, so the evaluation of medical opinions is governed by 20 C.F.R. § 404.1520c. This regulation requires the ALJ to evaluate the medical opinions presented and explain the persuasiveness of each. *See* 20 C.F.R. §§ 404.1520c(a), (b). Each medical opinion must be evaluated using the factors in 20 C.F.R. §§ 404.1520c(c)(1)-(5): supportability, consistency, relationship

---

[1] For clarity, the administrative decision and briefs occasionally spell the doctor's last name Kristal, but the correct spelling appears to be Kristl [R. 1357].

4

with the claimant, and specialization, along with others the ALJ may choose to incorporate. Of these, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2).

The administrative decision must explain how it considered supportability and consistency for each medical opinion, whereas it need not explain how it considered the other factors. *Id.* Omitting a discussion of supportability and consistency requires remand. *See Willis v. Acting Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 116679, 9 (N.D. Ind. June 30, 2022); *Inman v. Saul*, 2021 U.S. Dist. LEXIS 169891, 5 (N.D. Ind. Sept. 7, 2021). Here, as in all parts of the administrative decision, the ALJ must build a logical and accurate bridge between the evidence and the conclusions to enable meaningful review. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). An ALJ isn't required to consider every piece of evidence, but the administrative decision cannot ignore contrary lines of evidence or cherry-pick evidence. *See Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).

    1. *Ms. Castillo's History of Migraines.*

A brief chronicle of Ms. Castillo's history of migraines and treatment help to facilitate review of the administrative decision and its consideration of medical opinions from Dr. Kristl and Dr. Fischer. Ms. Castillo, who had not worked in the past fifteen years, testified that she could not work because she had migraines that occurred on a daily basis. In February 2018, she was diagnosed with intractable chronic migraine without aura and without status migrainosus [R. 402].[2] In April 2018, she reported having up to five migraines a week [R. 403]. In July 2018, though she had tried several medications for preventative and abortive measures, her migraines persisted [R. 408].

Indeed, they persisted into the following year. By February 2019, her migraines had reportedly become worse (aside from sharp pain to her head after amputation of part of her right hand that tended to make her migraines acuter) [R. 411]. By April 2019, she presented to the emergency room with a

---

[2] Status migrainosus is a headache that doesn't respond to usual treatment or lasts longer than 72 hours. An intractable migraine effectively means the same.

migraine, and doctors diagnosed her with a complex migraine with right facial droop and slurring of words that subsided with a drug cocktail [R. 841]. In July that year, she reported her "worst headache ever" with vomiting [R. 968] and expressed concerns that she was having the same headaches as her sister who passed youthfully from a brain aneurysm [R. 977]. In November 2019, she reported a history of migraines, though had none that day [R. 1095].

In February 2020, she was again diagnosed with intractable migraine without aura, after the migraine had started the day before [R. 1164, 1166]. In March 2020, she presented with a migraine at the emergency room "with a past medical history significant for a long history of migraines" and history of receiving medication in the emergency department [R. 624]. A sleep study that month indicated oxygen desaturation (low oxygen in blood), which could contribute to the severity of her migraines [R. 1230]. She reported having more severe migraines, but she had been off her migraine treatment regimen for several months [*id.*]. She reported that Ketorolac pain injections and a cocktail of medications helped reduce her migraines and avoid hospital visits [*id.*]. A muscle relaxant (Flexeril) helped alleviate some migraines, though not all [*id.*]. By June 2020, she was having more headaches—"they happen every day"—and potentially attributable or worsened by low oxygen and cataract surgery [R. 1357].

Ms. Castillo reported in August 2020 that Ibuprofen had been controlling her migraines [R. 1285], but within a month a new direction was needed after a "significant amount of headaches," and after her diagnosis of Crohn's disease that eliminated NSAIDs (anti-inflammatory drugs) as a treatment. Her neurologist (Dr. Kristl) recommended she try a new medication for her migraines [R. 1360]. She reported lost sleep, dizziness, and falling down from migraines. Dr. Kristl later submitted a headache questionnaire and opined that Ms. Castillo was incapable of low stress work and even basic work activities, and that she had a marked limitation in her physical functioning and concentrating [R. 1366-67].

6

    2.  *Dr. Kevin Kristl.*

Ms. Castillo argues that the ALJ reached an inadequate residual functioning capacity by inappropriately rejecting her treating neurologist's opinion without a rational basis for doing so. The administrative decision found Dr. Kristl's opinion "not persuasive" because it was "not consistent with the evidence that indicates that neurological examinations . . . and mental status examinations were essentially normal" [R. 20].

Dr. Kristl is a treating neurologist who submitted medical evidence (Exhibit 26F) [R. 1356] and a headache questionnaire (Exhibit 27F) [R. 1364]. Dr. Kristl treated Ms. Castillo for her migraines on June 18, 2020 [R. 1357] and September 10, 2020 [R. 1360]. In the headache questionnaire completed on October 1, 2020, Dr. Kristl diagnosed Ms. Castillo with "chronic migraine [without] aura, not intractable [without] status migrainosus" and "hemiplegic migraine not intractable [without] status migrainosus"[3] [R. 1364]. Dr. Kristl indicated that Ms. Castillo had various symptoms associated with her migraines, including nausea, vomiting, throbbing pain, mental confusion, inability to concentrate, mood changes, vertigo, numbness, visual disturbances, and pain that causes avoidance of activity [R. 1365]. Dr. Kristl called the intensity of her migraines "severe" in such a way as to prevent sustained activity [R. 1364].

Dr. Kristl noted that bright lights, moving around, and noise made her migraines worse, while lying down, taking medication, quiet places, dark rooms, hot packs, and cold packs helped them improve [R. 1365]. Dr. Kristl indicated that Ms. Castillo had approximately five migraines per week that typically lasted for 12 hours [R. 1365]; and that, with effective treatment, it typically took more than an hour before she could return to usual activity [R. 1366]. Dr. Kristl opined that Ms. Castillo was incapable of even low stress work and that her migraines caused significant interference with activity during the day [R. 1366].

---

[3] A hemiplegic migraine is a rarer subtype of migraine with aura, characterized by the presence of motor weakness when the migraine attack manifests. This may include weakness or speech impairment, for instance.

The administrative decision lacked substantial evidence for its conclusion. The administrative decision, albeit in one sentence, mentioned consistency with reference to certain neurological examinations and mental status examinations. No other explanation accompanied this conclusion. Out of the gate, the decision cited a number of examinations that had nothing to do with her migraines in the moment. For instance, the decision cited one set of neurological comments [R. 1095], but this originated from her visit about pain in her back and abdomen, not a migraine complaint. The decision cited another when she presented with coughing and runny nose [R. 1157]. Another stemmed for her visit for right knee pain [R. 1292]. Another stemmed from low and mid back pain as her chief complaint [R. 964]. Another stemmed from a visit to discuss her sleep study results [R. 1230]. Seemingly only three of the nine citations from the administrative decision discussed her neurology or mental status when she presented with a migraine [R. 407, 1183, 1357]. Weighing the evidence remains the ALJ's task, but this decision never explains why normal neurology outside a migraine attack speaks to the presence, history, frequency, or severity of her migraine disorder—particularly when the disorder has the ability to and seemingly in fact did wax and wane, *see Dennie K.K. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 229947, 12 (S.D. Ill. Dec. 21, 2022); *Bentley v. Colvin*, 2015 U.S. Dist. LEXIS 130715, 14 (N.D. Ind. Sept. 28, 2015)—or why it reveals a treating neurologist's opinion as inconsistent with the medical evidence.

Neurological examinations are relevant in the diagnosis of primary headache disorders. "Physicians diagnose a primary headache disorder after reviewing a person's full medical and headache history and conducting a physical and neurological examination." SSR 19-4p, 84 Fed. Reg. 44669 (Aug. 26, 2019). But ALJs must build a logical bridge in discussing normal neurological examinations and why that proves to be inconsistent or unsupporting of what is otherwise a rather deep-seated history of migraines, and not infrequently severe ones, particularly when by this guidance the full medical and migraine history remains quite pertinent too. *See id.*; *Woods v. Saul*, 2020 U.S. Dist. LEXIS 191934, 13 (E.D. Wis. Oct. 16, 2020) ("ALJ failed to explain why [claimant's] normal neurological exams undermined

8

her alleged migraine symptoms"); *Wessel v. Colvin*, 2015 U.S. Dist. LEXIS 112281, 14-15 (S.D. Ind. Aug. 4, 2015) ("the ALJ cited no expert opinion that the normal neurologic examinations meant that [claimant] does not truly experience the number or severity of migraines she reported"). The administrative decision cannot succumb to the temptation to play doctor instead of relying on expert opinions that determine the significance of particular medical findings—not least when, arguably, true medical support comes from her treating neurologist who opined that her condition was severe. *See Moon v. Colvin*, 763 F.3d 718, 721-23 (7th Cir. 2014) (decision erred by playing doctor in discussing migraines).

As articulated by this administrative decision, Dr. Fischer proves no help here. *See infra*. The only other expert testimony came from state agency medical consultants, but they (like Dr. Kristl) determined that Ms. Castillo's migraines were severe. In the initial disability determination (Exhibit 1A), Dr. Ann Lovko, a Ph.D. psychological consultant, noted a significant history of headaches since 2003 and concluded that Ms. Castillo's migraines were a severe medically determinable impairment [R. 102, 104-05]. Consultant Joshua Eskoenen, an osteopathic doctor (D.O.), likewise noted her daily bouts and called her migraines severe [R. 119-20]. The point isn't to say the state consultants should have been believed—that ultimately remains for the ALJ—but to explain that this administrative decision lacked the benefit of expert opinion to permit it to exalt certain normal neurology over the severity of Ms. Castillo's migraine history, or her resulting limitations, otherwise supported by every other expert, including her treating neurologist. Dr. Fischer was indeed an island unto himself, and he offered no real aid, at least as articulated in this decision.

That addresses all that this administrative decision offers on consistency, but this decision never discusses supportability. *See Willis*, 2022 U.S. Dist. LEXIS 116679 at 9 (failure to discuss supportability and consistency requires remand). Even reviewing the administrative decision in its entirety, the court cannot say the ALJ built a logical and accurate bridge in evaluating Dr. Kristl's opinion. The ALJ summarizes a June 2020 visit [R. 18-19], a September 2020 visit [R. 19], and Dr. Kristl's headache

9

questionnaire [R. 19-20]. Beyond that, though, the decision rests only on the one-sentence explanation on consistency. *See* 20 C.F.R. § 404.1520c(c)(1) (defining supportability). And that alone—without a logical explanation—also requires remand. *See Roddy*, 705 F.3d at 636.

   3. *Dr. Lee Fischer.*

Ms. Castillo says the ALJ relied on clearly wrong testimony from Dr. Fischer, who specializes in family medicine. The administrative decision found Dr. Fischer's opinion "persuasive" because his opinions were supported by a personal examination of medical evidence and his professional qualifications [R. 20]. Dr. Fischer testified through a medical interrogatory and then at the supplemental hearing. The administrative decision said Dr. Fischer's finding that Ms. Castillo was limited to sedentary work was "consistent with objective evidence of record" [*id.*].

Dr. Fischer testified through medical interrogatory (Exhibit 20F) [R. 1265] and at the second administrative hearing [R. 35]. He opined that Ms. Castillo had numerous impairments, including "headaches," but he said these were not severe [R. 1265]. He said, for instance, that she "has a long history of headaches. The emergency department treated her for migraines 1/14/20 with symptoms of a stroke. A stroke was ruled out and the physician noted a history of migraine with possible conversion disorder. He noted that her symptoms were not organic and probably functional." [R. 1266 (citations to record omitted)]. Regarding Ms. Castillo's residual functioning capacity, Dr. Fischer opined that "the medical evidence supports claimant's functional capabilities to work at the sedentary physical exertional level" [R. 1267], subject to certain limitations—being exposed to humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, and vibrations occasionally and a moderate noise level [R. 1272]. At the second administrative hearing, he testified that Ms. Castillo's migraines were not a severe impairment and that he did not assess any limitations associated with migraines [R. 36].

In weighing Dr. Fischer's opinion, the administrative decision referenced his medical qualifications, noted that his opinions were "supported by his personal examination of the medical

evidence," and determined that his opinion "was consistent with the objective evidence of the record" [R. 20]. The administrative decision cited to Dr. Fischer's medical credentials (Exhibits 21F and 22F) [R. 20, 1274-75], which reflect his medical degree in 1972 (thus longstanding), his board certification in family medicine (relevant), and licensure in Florida (1973) and Indiana (2006). The administrative decision thus considered the physician's specialization—one of the pertinent factors. *See* 20 C.F.R. § 404.1520c(c). Even if light, the court sees no issue with this discussion alone.

The concern lies with the missing logical bridge to undergird the factors of consistency and supportability. *See* 20 C.F.R. §§ 404.1520c(c)(1), (c)(2). A conclusion isn't a logical bridge. For instance, the administrative decision merely concludes that Dr. Fischer's opinion "was consistent with the objective evidence of the record." How?—the administrative decision never says. By regulation, under the consistency factor, the "more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[.]" 20 C.F.R. § 404.1520c(c)(2). The ALJ might well have had a sound explanation for viewing this medical opinion as consistent with the other medical and nonmedical sources, but a conclusion alone lends no bridge to travel to permit meaningful review. *See Roddy*, 705 F.3d at 636.

A brief reference in the administrative decision to supportability, if even fairly that, raises more questions than provides answers. Dr. Fischer testified that Ms. Castillo's migraines were not a severe impairment because headaches are "generally subjective" and because migraines "possibly" could be less than a severe impairment [R. 36-37]. Ms. Castillo argues that this is "a cop-out, refusing to even consider an impairment and omitting associated limitations because it is too hard for the non-examining family doctor to decide if the headaches could be real or not" [ECF 14 at 10]. The court cannot disagree. Whether a condition is generally or possibly something is not much of an opinion at all. *See, e.g., Harris v. Owens-Corning Fiberglas Corp.*, 102 F.3d 1429, 1433 (7th Cir. 1996) ("mere possibility . . . is not enough"); *Kirschner v. Broadhead*, 671 F.2d 1034, 1040 (7th Cir. 1982) (medical opinion suggesting "a mere possibility

11

is not an affirmative basis for a finding of fact"); *Baumann v. Astrue,* 2009 U.S. Dist. LEXIS 3641, 8-9 (D. Ariz. Jan. 20, 2009) (medical expert's testimony that impairments "could" cause difficulties working did not "definitively say so one way or the other" so the result is that the "medical expert refused to offer an opinion on this point").

What matters is what is reasonably certain or more probable for this particular claimant. A medical opinion must relate to the claimant specifically, not a general finding of what may be possible. *See* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinion" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions"). To the extent the administrative decision characterizes Dr. Fischer's viewpoint favorably as "supported by his personal examination of the medical evidence," that offers no rationale under supportability because in truth his viewpoint offered no expert opinion at all.

The analysis of supportability bears on the "more relevant [] objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). Perhaps the ALJ saw more in Dr. Fischer's support than what he testified were his reasons, but again this administrative decision never articulates what that might have been. That Dr. Fischer personally examined the medical evidence alone, like so many doctors often do, reveals no logical bridge for reaching the ALJ's conclusion—not when his justification remains based on generalities or possibilities. That isn't just a passing point when every other expert on this record seems to have disagreed with Dr. Fischer.

Nor is it the case that Dr. Fischer personally examined all the medical evidence. His medical interrogatory was based on his review of Exhibits 1-18F. It was requested on August 21, 2020 (Exhibit 19F) [R. 1259] and completed the next day (Exhibit 20F) [R. 1267]. Additional exhibits were submitted after this date. Dr. Fischer later testified at a supplemental hearing on January 7, 2021, noted that he had opportunity to review anew Exhibits 22F (his own professional qualifications), 24F (medical records from

South Bend Orthopedics), and 25F (an incomplete headache questionnaire from Dr. Kristl[4]), and said these records did not impact any of his responses in his earlier interrogatory [R. 35]. Based on the record, Dr. Fischer didn't review Ms. Castillo's patient chart report from HealthLinc Community Health Center (Exhibit 23F), medical records from Dr. Kristl's practice Michiana Neurological Medicine (Exhibit 26F[5]), Dr. Kristl's completed headache questionnaire (Exhibit 27F), or medical records from Michiana Gastroenterology (Exhibit 28F). To say Dr. Fischer personally examined the medical evidence just isn't true in respects, so this conclusion isn't supported by substantial evidence.

Lacking at times substantial evidence, lacking an adequate and logical bridge for reaching its conclusion about assigning weight to Dr. Fischer, and lacking specific and corroborated discussion of both supportability and consistency as factors, the court must remand. *See Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018).

    4. *Residual Functioning Capacity Limitations.*

Although the administrative decision ultimately determined that Ms. Castillo's migraine disorder was severe, these errors nonetheless aren't harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009). The Commissioner argues that the ALJ incorporated physical and mental limitations in Ms. Castillo's residual functioning capacity, seemingly even more limited than Dr. Fischer's assessment of sedentary work. First, reconsideration of the factors governing medical opinion may cause a reassessment of Ms. Castillo's limitations and thus her residual functioning capacity. Second, "the reviewing court should not have to speculate as to the basis for the RFC limitations," *Moore v. Colvin*, 743 F.3d 1118, 1128 (7th Cir. 2014), and though the administrative decision articulated specific limitations, it never related these

---

[4] This headache questionnaire was missing the fifth page. A completed headache questionnaire was submitted as Exhibit 27F on January 21, 2021 [R. 1363].

[5] The cover page of the exhibit says it was submitted on January 7, 2020, but this is clearly a scrivener's error. The exhibit includes records from visits beginning June 18, 2020 through September 10, 2020. Based on the chronology of the medical exhibits, the court reasonably concludes that this exhibit was submitted on January 7, 2021.

limitations to certain impairments. The Commissioner says that the ALJ included limitations relating to migraines, naming environmental limitations and mental limitations, but the administrative decision never connected these dots.

"It is possible to postulate which were related to migraines as opposed to the other severe or non-severe impairments," but the court should not have to do so. *Id.* at 1127-28. The court cannot say that the administrative decision established a logical bridge between the limitations within the residual functioning capacity and Ms. Castillo's migraines. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (ALJ must "sufficiently connect[] the dots between [a claimant's] impairments, supported by substantial evidence in the record, and the RFC finding"). Accordingly, the court must remand to the ALJ to "articulate with clarity the limitations related to the impairments based on an examination of the evidence in the record as a whole." *Moore*, 743 F.3d. at 1128.

    B.    *Other Arguments.*

Ms. Castillo advances other arguments about her residual functioning capacity and whether the amount of jobs that could be performed is significant. However, because the administrative decision erred in analyzing Ms. Castillo's migraines and medical testimony, the court need not address these points. Complete analysis may alter these aspects of the administrative decision. Ultimately whether they will the court leaves to the ALJ.

## CONCLUSION

Accordingly, the court thus GRANTS Ms. Castillo's request for remand [ECF 14] and REMANDS the Commissioner's decision.

SO ORDERED.

March 27, 2023                                            *s/ Damon R. Leichty*
                                                                               Judge, United States District Court